**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-03449-RM

CHRISTIAN J. KIMBROUGH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Plaintiff Christian J. Kimbrough's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act").  An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

    Defendant provided the Court with the administrative record.  (ECF Nos. 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8; 10-9; 10-10.)  The parties have fully briefed the matter and it is ripe for adjudication.  (ECF Nos. 16; 19; 20.)

    For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB and SSI applications and remands for further proceedings consistent with this Order.

I.      BACKGROUND

In March 2011, Plaintiff applied for DIB and SSI alleging he was disabled as of May 6, 2008 (Tr. 159) due to the following conditions that limit his ability to work: bipolar II disorder and an unresolved tibia fracture (Tr. 159). Plaintiff subsequently amended his disability onset date to September 22, 2009. (Tr. 31.) After Plaintiff's applications were initially denied (Tr. 62-90), Plaintiff requested a hearing before an ALJ (Tr. 95-96) which occurred in August 2012 (Tr. 27-61). On August 28, 2012, the ALJ denied Plaintiff's applications. (Tr. 11-22.) Plaintiff requested review of the ALJ's decision and, in October 2013, the Appeals Council declined review of the ALJ's decision. (Tr. 1-6.) Plaintiff timely requested judicial review before the Court.

A.      **Background and Relevant Medical Evidence**

Plaintiff was born in 1977. (Tr. 31.) Plaintiff has a high school equivalent education. (Tr. 31.) Plaintiff reported his past work as a tire changer, construction worker, kitchen helper, carwash attendant, industrial cleaner, short-order cook, heating and conditioning repair person, and small-engine maintenance person. (Tr. 57-58, 166.)

Plaintiff claims he became disabled on September 22, 2009 (Tr. 31) due to a combination of physical and mental health impairments (Tr. 62, 83, 91, 135-143).

1.      Physical Impairments

In June 2011, Plaintiff underwent a physical consultative examination performed by Nancy Cutter, M.D. (Tr. 393-99.) Plaintiff reported that he had been in a motorcycle accident in October 2010, in which he sustained multiple injuries—including a back fracture, shoulder injury, leg fracture, hip fracture, sternum fracture, and neck fracture. (Tr. 393.) Plaintiff stated his leg fracture had not healed. (Tr. 393.)

Dr. Cutter opined that x-rays showed that Plaintiff's leg fracture had healed. (Tr. 398.) Dr. Cutter concluded Plaintiff

> should be able to carry and lift 50 pounds occasionally and 20 pounds frequently. He may need occasional postural limitation[s] for bending, squatting, crouching, and stooping. There are no manipulative limitations recommended at this time. . . . There may be workplace environmental conditions expected for unprotected heights, ladders, stairs, and heavy machinery. He can handle rare complexity of stress. He would need frequent every two hour rest breaks. . . . Please defer specific psychiatric recommendations to the appropriately trained mental health specialist.

(Tr. 398.)

At the hearing, Plaintiff testified that he still had pain in his left leg from the 2010 motorcycle accident. (Tr. 46-47.) Plaintiff also testified that he had back and neck pain for which he took over-the-counter pain medication. (Tr. 48-49.) Plaintiff testified that he has other physical limitations as a result of pain. (Tr. 46-50.)

    2.    Mental Impairments

In December 2009, Plaintiff underwent a psychiatric evaluation at Southwest Colorado Mental Health Center ("SCMHC") performed by Steve Kitson, M.D. (Tr. 228-29.) Dr. Kitson diagnosed Plaintiff with bipolar II disorder, polysubstance abuse dependence, and impulse-control disorder, and assigned him a global assessment of functioning ("GAF") score of 60. (Tr. 229.) Dr. Kitson noted that Plaintiff had responded well to psychotropic medications in the past and he recommended continuing them. (Tr. 229.)

In January 2010, Plaintiff underwent a psychological consultative examination performed by Juanita Ainsley, Psy.D. (Tr. 230-35.) Dr. Ainsley diagnosed Plaintiff with intermittent explosive disorder; bipolar disorder per Plaintiff's history; post-traumatic stress disorder; rule out attention deficit hyperactivity disorder; substance abuse per Plaintiff's history; and paranoid

personality disorder. (Tr. 234.) Dr. Ainsley assigned Plaintiff a GAF score of 45. (Tr. 234.) Dr. Ainsley opined that Plaintiff would be able to learn and remember instructions appropriately at the unskilled labor level. (Tr. 234). Specifically, Dr. Ainsley found that Plaintiff had good cognitive abilities, understood daily and practical situations, and was able to make realistic judgments appropriate for decisions in a noncomplex and supportive work setting with little interpersonal contact. (Tr. 234.)

In August 2011, MaryAnn Wharry, Psy.D., a non-examining State agency psychologist, reviewed the record and completed a Psychiatric Review Technique Form ("PRTF"). (Tr. 68-69.) Dr. Wharry found that Plaintiff had "moderate" restrictions in daily living, social functioning, as well as in maintaining concentration, persistence, or pace. (Tr. 69.) Dr. Wharry found that Plaintiff had no extended episodes of decompensation. (Tr. 69.) Dr. Wharry also opined that Plaintiff retained the mental ability to do work of limited complexity and that he could not work closely with the public, supervisors, or co-workers, but he could accept supervision and relate to co-workers, if contact was not frequent or prolonged. (Tr. 73.)

At the hearing, Plaintiff testified that due to his bipolar disorder he was depressed, angry, and anxious around people. (Tr. 40-41.) Plaintiff testified that he experiences manic episodes up to three times per week. (Tr. 45.) Plaintiff testified that his medications are somewhat effective. (Tr. 43-44.)

### B.     The ALJ's Decision

On August 28, 2012, ALJ William Musseman issued his decision in this matter denying Plaintiff DIB and SSI. (Tr. 11-22.) In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 14-22.) ALJ Musseman found that Plaintiff has met the disability insured status of the Act through June 30, 2012 and has

not engaged in substantial gainful activity since May 22, 2009, the alleged onset date[1]. (Tr. 16.) ALJ Musseman found that Plaintiff has the following severe impairments: affective disorder and substance abuse disorder. (Tr. 16-17.) ALJ Musseman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 12.04 and 12.09. (Tr. 17.) ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows: "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: requires non-complex tasks (SVP 2 or less) and minimal supervision, and no dealing with the general public." (Tr. 17-20.) ALJ Musseman found that Plaintiff has past relevant work and that he is unable to perform such work. (Tr. 20.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Musseman's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Musseman found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including: industrial cleaner, construction flagger, and production assembler. (Tr. 20-21.)

Therefore, ALJ Musseman concluded that Plaintiff was not disabled. (Tr. 21.)

**C.      Procedural History**

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 7-10.) On October 22, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

---

[1] It is not clear to the Court why the ALJ did not use the amended alleged onset date of September 22, 2009 (Tr. 31).

## II. LEGAL STANDARDS[2]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is

---

[2] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability. *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If

it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

## III. ANALYSIS

Plaintiff raises numerous issues for the Court's consideration, including that: (1) the ALJ's RFC determination is not supported by substantial evidence in the record or the applicable law (ECF No. 16 at 25-31); (2) the ALJ failed to properly evaluate the consultative and

examining physicians' opinions (ECF No. 16 at 31-33); and (3) the ALJ failed to properly assess Plaintiff's credibility (ECF No. 16 at 33-35).

Because the Court finds the ALJ committed legal error due to his failure to analyze Plaintiff's physical impairment in consideration of the applicable RFC, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by the opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider all of the evidence and the issues anew.

### A. The ALJ Committed Reversible Error by Failing to Analyze Plaintiff's Physical Impairment in Consideration of the Applicable RFC

In this matter, the ALJ acknowledged that Plaintiff's DIB and SSI applications were, in part, based upon Plaintiff's tibia fracture. (Tr. 16.) The ALJ considered the consultative examination performed by Dr. Cutter in assessing this alleged impairment[3]. (Tr. 16-17.) The

---

[3] The Court notes that Dr. Wharry found Plaintiff to have a medically determinable impairment concerning the fracture. (Tr. 68-69.) The Court notes that Breanne Bassett, SDM ("Single Decision Maker"), found Plaintiff to have exertional and postural limitations. (Tr. 70-71.) The Disability Determination Explanation was signed by both Dr. Wharry and Ms. Bassett. (Tr. 63-76.) As the SDM is not a medical professional, her opinion is entitled to no weight. *Cunningham v. Astrue*, Case No. 09-2535-SAC, 2010 WL 4737795, at *4 (D. Kan. Nov. 16, 2010) (citation omitted); *Klobas v. Astrue*, Case No. 08-cv-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010) (citations

ALJ accorded Dr. Cutter's opinion "little weight." (Tr. 16.) Dr. Cutter noted "no abnormal findings upon examination and [that] his fractures are healed." (Tr. 16 (citing Tr. 393-99).) The ALJ found[4], however, that Dr. Cutter opined that Plaintiff "is limited to occasional postural activities and needs breaks every two hours." (Tr. 16.) The ALJ concluded that the alleged disability due to a tibia fracture is an "impairment [that] is non-severe." (Tr. 16-17.) The ALJ did not discuss Plaintiff's physical impairment, *i.e.*, disability as a result of the tibia fracture, in considering Plaintiff's RFC. (*See generally* Tr. 17-20.)

The RFC is defined as the most that a claimant can do in a work setting despite the claimant's mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). "The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished). "The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." *Id*.

"'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Also relying on SSR 96-8p, the Tenth Circuit in *Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (unpublished) described the analysis required in the RFC as follows:

---

omitted). Further, as a SDM's opinion does not represent the first hand, direct observations of a lay witness, it does not even constitute evidence from "other non-medical sources" per 20 C.F.R. § 404.1513(d)(4). *Cunningham*, 2010 WL 4737795, at *4. Thus, the Court does not consider Ms. Bassett's exertional and postural limitations.

[4] The Court notes that the ALJ's finding does not exactly match Dr. Cutter's functional assessment. (*Compare* Tr. 16 with Tr. 398.) Specifically, Dr. Cutter opined that Plaintiff "may need occasional postural limitation[s] . . . [and that] [h]e would need frequent every [sic] two hour rest breaks." (Tr. 398.)

> The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

*Id*. (quoting SSR 96-8p, 1996 WL 374184, at *7). The ALJ must also explain *how any material inconsistencies or ambiguities in the case record were considered and resolved*. *Id*. In this matter, the ALJ did not explain how he considered and resolved the inconsistency (Tr. 398) between Dr. Cutter's functional limitation assessment (may need occasional postural limitations and would need frequent two-hour rest breaks) and Dr. Cutter's medical evaluation (Plaintiff's tibia fracture had healed). (*See generally* Tr. 17-20.) The ALJ cannot disregard or reject a *treating* physician's opinion solely because of its confusing nature; such reason is not adequate absent an attempt to recontact the physician. *Andersen v. Astrue*, 319 F. App'x 712, 727 (10th Cir. 2009) (unpublished). While this matter concerns a consultative examiner's opinion, such reasoning is equally applicable.

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. In this matter, the ALJ did not discuss why Plaintiff's reported pain related to his tibia fracture (Tr. 47-49) can or cannot reasonably be accepted as consistent with Dr. Cutter's functional assessment (Tr. 398). (Tr. 17-20.) Further, the ALJ did not engage in an examination as to any physical limitations. A function-by-function evaluation is necessary in order to arrive at an accurate RFC. SSR 96-8p, 1996 WL 374184 at *3-*4 ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations or restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions.").

It is axiomatic that all of the ALJ's required findings, including the RFC, must be supported by substantial evidence. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Thus, where the ALJ fails to point to specific evidence supporting each conclusion, the RFC findings are not supported by substantial evidence and a remand is required. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003) (unpublished); *see also Moon v. Barnhart*, 159 F. App'x 20, 23 (10th Cir. 2005) (unpublished) (remanding the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC). In this matter, the ALJ did not identify any evidence in support of his conclusion that Plaintiff is capable of performing "a full range of work at all exertional levels." (*See generally* Tr. 17-20.)

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar*, 468 F.3d at 621 (citations omitted); *accord* 42 U.S.C. § 423(d)(2)(B); *accord* 20 C.F.R. § 404.1523. At Steps 4 and 5, the ALJ "must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) (emphasis in original). "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4). Although the ALJ found Plaintiff's tibia fracture to be a non-severe impairment (Tr. 16-17), this did not excuse the ALJ from considering Plaintiff's tibia fracture in relation to Plaintiff's RFC. "[T]he

ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" *Wells*, 727 F.3d at 1065 (citing SSR 96-8p, 1996 WL 374184 at *7).

When an ALJ does not provide an explanation for rejecting medical evidence, *i.e.*, Dr. Cutter's proposed functional limitations, the Court cannot meaningfully review the ALJ's determination. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (holding ALJ's listing of factors he considered was inadequate when court was "left to speculate what specific evidence led the ALJ to [his conclusion]")).

Harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). This analysis is applied cautiously in the administrative context. *Id*. at 733. Where the court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). In this matter, Defendant does not advocate that the Court apply harmless error analysis. Further, the Court does not find the harmless error analysis applicable in this matter. Specifically, the Court is unable to discern how the ALJ's affording Dr. Cutter's opinion "little weight" comports with the finding that Plaintiff has a medically determinable impairment in relation to the tibia fracture (the Court reserves for the ALJ to consider again whether Plaintiff's healed tibia fracture constitutes a medically

determinable impairment[5]); or Dr. Cutter's opinion that Plaintiff have some exertional limitations but that the ALJ then does not discuss his reason for rejecting such opinion.

## IV. CONCLUSION

Based on the foregoing, the Court:

(1) VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

(2) REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 27th day of January, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

---

[5] Defendant does not contest that the ALJ found Plaintiff's tibia fracture to be a medically determinable impairment. (*See* ECF No. 19 at 11 ("the ALJ reasonably concluded that Plaintiff's leg impairment and any resulting pain was not severe").)